William GARRISON, et al., Plaintiffs,

v.

CITY OF LAKELAND, et al., Defendants.

No. 96–2406–CIV–T–23E.

United States District Court,
M.D. Florida,
Tampa Division.

Jan. 13, 1997.

Tobe M. Lev, Egan, Lev & Siwica, Orlando, FL, for plaintiffs.

Joseph Pace Mawhinney, City of Lakeland, Lakeland, FL, Peter W. Zinober, Scott T. Silverman, Zinober & McCrea, P.A., Tampa, FL, for defendants.

### ORDER

MERRYDAY, District Judge.

Before the Court is the plaintiffs' motion for temporary restraining order (Doc. 2).

Upon consideration of the record and the arguments of counsel presented at the hearing on this matter, the motion is **DENIED**.

The plaintiffs are representatives of the United Food and Commercial Workers Union, AFL–CIO ("UFCW"), a labor organization within the meaning of the National Labor Relations Act, 29 U.S.C. § 152 (the "Act"). Through the plaintiffs and other UFCW representatives, UFCW launched an electoral campaign for certification by the NLRB as the exclusive bargaining agent for the employees of the Lakeland Regional Medical Center, Inc. ("LRMC"). LRMC operates a private, nonprofit hospital leased from the defendant, the City of Lakeland (the "City").

In pursuit of their petition efforts, the plaintiffs unsuccessfully attempted to distribute to LRMC employees, while entering and exiting the hospital, leaflets containing information regarding the petition campaign. In each instance, the plaintiffs sought to array themselves along portions of "Park Trammel Boulevard" (the "Boulevard"), a paved access to the hospital stemming from both Florida Avenue and Lakeland Hills Boulevard. In compliance with requests by LRMC, City police officers issued warnings to the plaintiffs, who are not employees of LRMC, for trespassing on private property.[1]

LRMC's resistance to the plaintiffs' leafleting caused UFCW to file two separate charges of unfair labor practices with the Regional Director of the National Labor Relations Board (the "NLRB" or the "Board") in October of 1996.[2] UFCW seeks injunctive and other relief from the NLRB in connection with LRMC's allegedly unlawful conduct. LRMC is currently responding to UFCW's charges before the Board.

On November 28, 1996, the plaintiffs filed the instant suit against the City and the City's chief of police, claiming First Amendment violations and requesting injunctive and other relief pursuant to 42 U.S.C. § 1983.[3] In the motion before the Court, the plaintiffs seek a temporary restraining order precluding the City from issuing trespass warnings or traffic citations to individuals engaged in peaceful hand billing along the Boulevard. This case and the pending NLRB proceedings arise from the same operative facts.

The NLRB generally possesses jurisdiction to consider, in the first instance and subject to federal court review, allegations of conduct that is protected or prohibited by the Act. *See* 29 U.S.C. § 160; *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). In contrast, constitutional issues raised independently of claims under the Act generally fall outside of the NLRB's primary jurisdiction and are subject to federal court jurisdiction. *See Communications Workers of Amer. v. Beck,* 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988). However, the existence of an interrelated constitutional issue in a labor dispute does not automatically remove the controversy from the NLRB's primary consideration. "[W]hen the statutory and constitutional claims are premised on the same facts and the administrative process [is] fully capable of granting full relief, exhaustion [of administrative remedies] is required." *National Treasury Employees Union v. King,* 961 F.2d 240 (D.C.Cir.1992) (quotations omitted).

The record fails to warrant a judicial disturbance of the NLRB's primary jurisdiction over this matter. There is no competent evidence suggesting that the plaintiffs are unable to obtain adequate relief from the

---

1. In one instance, a police officer cited three individuals (including the plaintiff, William Garrison) for allegedly creating a traffic hazard by walking along a roadway paved for vehicular traffic.

2. UFCW's charges before the NLRB allege derivative violations of Sections 7 and 8 of the Act. Section 7 states that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations." 29 U.S.C. § 157. Pursu-

ant to Section 8(a)(1), an "unfair labor practice" results when an employer "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of rights guaranteed in [Section 7]."

3. Although originally not a party this action, LRMC appeared at the hearing on this matter and was granted leave to intervene as a defendant.

NLRB.[4] The NLRB routinely considers disputes that are factually similar to the present controversy. *See, e.g., O'Neil's Markets v. United Food and Commercial Workers' Union,* 95 F.3d 733 (8th Cir.1996); *Bristol Farms, Inc. and United Food and Commercial Workers Int'l Union,* 311 NLRB 437 (May 28, 1993). By lodging charges with the Board against LRMC, the plaintiffs and UFCW acknowledged their ability to obtain suitable relief, including injunctive relief, through the administrative process. Any other interpretation of UFCW's actions in this regard would render them purely gratuitous. UFCW's mere discontentment with the status of the NLRB proceedings fails to divest the Board of its primary jurisdiction to consider this matter.

Nevertheless, the plaintiffs' failure to exhaust their administrative remedies, a procedural infirmity, is not the sole basis for the Court's ruling. The plaintiffs also fail to establish a substantial likelihood of success on the substantive merits of their claims, irrespective of the proper procedural posture of this case.

In a series of cases beginning with *NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975 (1956), and concluding with *Lechmere, Inc. v. NLRB,* 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), the Supreme Court examined an employer's right to exclude union supporters from the employer's property. In *Babcock,* the employer sought to preclude nonemployee organizers from distributing union literature on the employer's privately owned parking lot. Disagreeing with the Board's determination that the employer's conduct violated the Act, the Supreme Court held that the union failed to show that access to the employer's property was legally necessary:

> [A]n employer may validly post his property against nonemployee distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message.

351 U.S. at 112, 76 S.Ct. at 684. The Court recognized that the primary task of striking a balance between "[o]rganization rights" and "property rights" rests with the Board. *Id.*

In *Amalgamated Food Employees Union v. Logan Valley Plaza,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), the Court considered a union's right, in light of First Amendment principles, to conduct organizational activities on an employer's private property. In *Logan Valley,* the employer obtained a state court injunction prohibiting nonemployee organizers from trespassing on the employer's property by picketing in parking areas surrounding the employer's shopping center. Concluding that the shopping mall possessed the same public forum qualities as the business district in *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), the Supreme Court held that the First Amendment protected the union's activities.

The precedential potency of *Logan Valley* was short-lived. The Court seized an opportunity to recede from the opinion in *Central Hardware Company v. NLRB,* 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972). *Central Hardware* involved nonemployee organizers who challenged the employer's nonsolicitation rule prohibiting union hand billing on the employer's parking lots. Relying on *Logan Valley,* the Eighth Circuit determined that the union's pamphleting on the employer's parking lot was protected by the First Amendment. *Central Hardware Company v. NLRB,* 439 F.2d 1321 (1971). The Supreme Court reversed. Finding that the employer's parking lots lacked the public attributes of the municipal business block in *Marsh,* the Court summarily distinguished *Logan Valley* and cautioned against an expansive interpretation of either *Marsh* or *Logan Valley:*

> The only fact relied upon for the argument that [the employer's] parking lots have acquired the characteristics of a public municipal facility is that they are "open to the public." Such an argument could be made

**4.** The record lacks competent evidence suggesting, for example, that a threat of administrative delay requires federal court intervention. *See*

*McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

with respect to almost every retail and service establishment in the country, regardless of size or location. To accept it would cut *Logan Valley* entirely away from its roots in *Marsh*. It would also constitute an unwarranted infringement of long-settled rights of private property protected by the Fifth and Fourteenth Amendments.

*Central Hardware,* 407 U.S. at 547, 92 S.Ct. at 2243. The Supreme Court remanded to the Court of Appeals with instructions to consider the employer's conduct in light of *Babcock.*

*Logan Valley* was finally laid to rest by *Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). In *Hudgens,* the employer sought to preclude union organizers from picketing its retail store located in a shopping center. Arguing that the union members enjoyed First Amendment protection to picket within the shopping plaza, the union obtained from the Board a cease and desist order prohibiting the employer from interfering with the union's picketing. The Fifth Circuit enforced the Board's order. *Hudgens v. NLRB,* 501 F.2d 161 (5th Cir. 1974).

On appeal to the Supreme Court, the union and the employer argued that their dispute was subject to the statutory provisions of the Act alone. In contrast, the NLRB argued that the controversy was governed by the First Amendment. The Supreme Court framed the nature of the issue presented as follows:

> In the present posture of the case the most basic question is whether the respective rights and liabilities of the parties are to be decided under the criteria of the National Labor Relations Act alone, under a First Amendment standard, or under some combination of the two.

*Hudgens,* 424 U.S. at 512, 96 S.Ct. at 1033.

In resolving this issue, the Court recognized that *Logan Valley* could not be reconciled with *Lloyd v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972). In *Lloyd,* the Court upheld a shopping center's right to exclude Vietnam era protesters from distributing political handbills on the mall's property. Considering the indistinguishable quali-

ties shared between the shopping centers in *Logan Valley* and *Lloyd,* the Court resolved the analytical tension between the two opinions against *Logan Valley.* "[W]e make clear now, if it was not clear before, that the rationale of *Logan Valley* did not survive the Court's decision in the *Lloyd* case." *Hudgens,* 424 U.S. at 518, 96 S.Ct. at 1035.

Finding constitutional principles inapplicable, the Court held the parties' dispute to be governed "exclusively" by the Act and subject to the primary jurisdiction of the Board:

> The task of the Board and the reviewing courts under the Act, therefore, stands in conspicuous contrast to the duty of a court in applying the standards of the First Amendment, which requires "above all else" that expression must not be restricted by government "because of its message, its ideas, its subject matter, or its content."
>
> .     .     .     .     .
>
> The *Babcock & Wilcox* opinion established the basic objective under the Act: accommodation of § 7 rights and private property rights "with as little destruction of one as is consistent with the maintenance of the other." The locus of that accommodation, however, may fall at differing points along the spectrum depending on the nature and strength of the respective § 7 rights asserted in any given context. In each generic situation, the primary responsibility for making this accommodation must rest with the Board in the first instance. "The responsibility to adapt the Act to changing patterns of industrial life is entrusted to the Board."

*Hudgens,* 424 U.S. at 521–23, 96 S.Ct. at 1037–38 (citations omitted).

In *Lechmere, Inc. v. NLRB,* 502 U.S. 527, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992), the Court affirmed the principles articulated in *Babcock, Central Hardware,* and *Hudgens. Lechmere* involved an employer who sought to preclude nonemployee union organizers from placing handbills on the windshields of cars parked on the employer's parking lot. The NLRB and the First Circuit determined that the employer's conduct violated the Act. *Lechmere, Inc. v. NLRB,* 914 F.2d 313 (1st Cir.1990).

The Supreme Court reversed the Court of Appeals, holding that, in contravention of the rule established in *Babcock*, the union failed to establish the requisite lack of "reasonable alternative means of access" to employees located on the employer's private property. *Lechmere*, 502 U.S. at 537, 112 S.Ct. at 847–48. Restating the general rule that an employer "cannot be compelled to allow distribution of union literature by nonemployee organizers on his property," the Court confirmed the viability of *Central Hardware* and *Hudgens* and reiterated the demise of *Logan Valley*:

> The principal issues in both [*Central Hardware* and *Hudgens*] was whether, based upon *Logan Valley*], the First Amendment protected such activities. In both cases we rejected the First Amendment claims, and in *Hudgens* we made it clear that *Logan Valley* was overruled. Having decided the cases on constitutional grounds, we remanded them to the Board for consideration of the union supporters' § 7 claims under *Babcock*.

*Lechmere*, 502 U.S. at 534.

■ Viewed in consideration of the applicable precedent, the record fails to establish that the plaintiffs will succeed on the merits of their claims. Significant evidence indicates that the Boulevard is private, not public, property. The paved access, which has never been dedicated by the City as a public thoroughfare, falls within the unreserved leasehold interests transferred to LRMC through its lease agreement with the City. An affidavit submitted by LRMC states that the hospital, and not the City, assumed and exercised control over the Boulevard throughout the term of the lease. This declaration is supported by various records submitted by the plaintiffs in support of their motion, stating that—long before, and independent of, the issues raised by the instant suit—the City historically assumed the position that the Boulevard is not a public road, but rather a local access drive maintained by LRMC as part of its internal circulation system. These factors suggest that both the City and LRMC considered, contractually and otherwise, the Boulevard to be private property.

■ Easy access by the general public is insufficient to warrant characterizing the leasehold as public property. The expressed concern by the Supreme Court for the protection of private property rights during labor disputes adumbrates and commends this legal result.

The plaintiffs' attempt to analogize LRMC to the municipal business district in *Marsh* cannot survive controlling precedent. The Court finds no relevant distinction between LRMC and the shopping centers in *Central Hardware*, *Lloyd*, *Hudgens*, and *Lechmere*. The private ownership and private character of the Boulevard remove this case from First Amendment consideration and place it squarely within the exclusive purview of the Act and the primary jurisdiction of the NLRB.[5]

■ Pursuant to the Act and UFCW's status as a nonemployee union organizer, LRMC may be compelled to allow the plaintiffs and UFCW access to LRMC's property only if UFCW's reasonable attempts of reaching targeted employees through ordinary channels of communication are ineffective. However, the plaintiffs fail to argue, much less attempt to establish, that the requested accommodation is necessary under the circumstances. Indeed, the record evidences strongly that the contrary is true. Affidavits on file indicate that UFCW's petition campaign obtained full access to LRMC's employees despite LRMC's refusal to allow hand billing on its property. Without any evidence tending to show that the plaintiffs lack an ability to communicate with LRMC's employees through reasonable alternative means, the plaintiffs fail to establish a substantial likelihood that they will succeed on the merits of their claims under

---

**5.** The reasoning supporting the Court's ruling is not altered by the fact that the plaintiffs initially directed their claims against the City, and not LRMC. The evidence before the Court indicates that the City acted solely at the behest of LRMC and in response to LRMC's belief (supported by the record) that the plaintiffs trespassed on their property.

the Act.[6]

ORDERED.

---

**6.** The record also fails to support a finding that LRMC permitted other forms of solicitation in a discriminatory or other manner that violates the Act. *See Lucile Salter Packard Children's Hosp. v. NLRB*, 97 F.3d 583 (D.C.Cir.1996); *Cleveland Real Estate Partners v. NLRB*, 95 F.3d 457 (6th Cir.1996).