**VENETIAN CASINO RESORT, L.L.C., a Delaware limited liability company, Plaintiff,**

v.

**LOCAL JOINT EXECUTIVE BOARD OF LAS VEGAS; Culinary Workers Union, Local No. 226, an unincorporated association; Bartenders Union, Local No. 165, an unincorporated association; Clark County, a political subdivision of the State of Nevada; Stewart Bell, in his capacity as District Attorney of Clark County, Nevada; and the Las Vegas Metropolitan Police Department, Defendants.**

No. CV–S–99–00276–PMPRJJ.

United States District Court, D. Nevada.

April 27, 1999.

William T. Coleman, Jr., Walter Dellinger, Gordon Krischer, Crystal Nix, O'Melveny & Myers LLP, Washington, DC, Samuel S. Lionel, Rodney M. Jean, Paul E. Larsen, Lionel Sawyer & Collins, Las Vegas, NV, for Venetian Casino Resort, L.L.C.

Richard G. McCracken, Michael T. Anderson, McCracken, Stemerman, Bowen & Holsberry, Las Vegas, NV, for Local Joint Exec. Bd., Culinary Union and Bartenders' Union.

Stewart Bell, District Attorney, Mitchell M. Cohen, Dep. DA, Las Vegas, NV, for Clark County, Bell and LVMPD.

## ORDER

PRO, District Judge.

This case calls upon the Court to consider whether a pedestrian walkway, located on private property parallel and adjacent to the Las Vegas Strip and connected at both ends to public sidewalks, is a public forum for First Amendment purposes.

The Venetian Casino Resort ("Venetian") is a large hotel and casino currently under construction at the southeast corner of Las Vegas Boulevard and Sands Avenue. A temporary pedestrian walkway that is soon to become a permanent sidewalk runs along the frontage of the Venetian property bordering the Las Vegas Strip. This walkway is the only thoroughfare for pedestrians walking on the east side of the Strip and connects to public sidewalks at the north and south ends of the Venetian property. On March 1, 1999, Defendants Local Joint Executive Board of Las Vegas, Culinary Workers Union, Local No. 226, and Bartenders Union, Local No. 165 (collectively "Unions") staged a demonstration rally including picketing on the temporary pedestrian walkway to protest the Venetian's employment practices. Although the Venetian requested that the Las Vegas Metropolitan Police Department arrest the protestors for trespassing on private property, the Clark County District Attorney advised the Las Vegas Metropolitan Police Department ("LVMPD") not to do so under the sensible theory that because the pedestrian walkway looked and functioned like a public sidewalk, those peacefully protesting had a cognizable First Amendment defense to any charge of trespass.

The current dispute concerns whether the Unions, or others, have a right to exercise their First Amendment rights to free expression, subject to reasonable and content neutral time, place and manner restrictions, on the Venetian's pedestrian walkway to the same extent they could do so on a public sidewalk.

Presently before the Court is Plaintiff Venetian Casino Resort's Motion for Temporary Restraining Order and Preliminary Injunction (# 9) filed on April 2, 1999. Defendants Clark County, District Attorney Stewart L. Bell, and Las Vegas Metropolitan Police Department (collectively "County") filed a Response (# 23) on April 12, 1999. The Defendant Unions filed an Opposition (# 27) on April 12, 1999. On April 19, 1999, the Venetian filed a Reply (# 36). The Court held a hearing on the Venetian's Motion for Temporary Restraining Order and Preliminary Injunction on April 21, 1999.

### I. Factual Background

The Venetian is located at the former site of the Sands Casino. As part of a plan to demolish the Sands and build the Venetian, the owners of the Sands entered into a pre-development agreement with Clark County on February 18, 1997 ("1997 Agreement"). (Sands Resort Hotel & Casino Agreement, attached as Ex. 1 to Pl.'s Mot. T.R.O./Prelim. Inj.) Part of the 1997 Agreement related to the construction of various improvements including improvements along the Venetian's frontages on

Las Vegas Boulevard South, commonly referred to as the "Las Vegas Strip," and any improvements recommended by a traffic impact study. (1997 Agreement, *supra*, at ¶ 1.2(i).) The 1997 Agreement also contains the following provision where the developer agrees to turn over proposed public property rights:

> "DEVELOPER agrees to convey all proposed public property rights owned by the DEVELOPER to the COUNTY or the State of Nevada Department of Transportation, at no cost or expense, free and clear of all liens, covenants, restrictions and encumbrances, as required for construction, maintenance or use of the IMPROVEMENTS.... Any conveyance of land by the DEVELOPER to the COUNTY or the State of Nevada, for public use of sidewalks, walkways or other forms of pedestrian passage through the DEVELOPMENT, will be for facilitating the perpetual flow of pedestrian traffic ... without restrictions."

(1997 Agreement, *supra*, at ¶ 2.2.)

The County approved the 1997 Agreement following a hearing that included the participation of the Unions. During the hearing, several County Commissioners expressed concern that the public might not have free speech rights on the sidewalk in front of the Venetian. (Transcript of The Board of County Commissioners' Meeting, attached as Ex. 1 to Unions' Opp'n, at pp. 37–39 [hereinafter Hearing].) This concern apparently stemmed from a previous experience when the police arrested Union members for protesting on a private sidewalk next to the MGM Grand Hotel. (Hearing, *supra*, at 42–43.) The response these concerns received at the hearing is not clear. Early in the Hearing, Mark Figgens, a Deputy District Attorney, told the Commissioners that the 1997 Agreement specified that the sidewalks were for public purposes and preserved full rights for the public. (Hearing, *supra*, at 5–6.) Later in the hearing, Figgens' response to the free speech issue is less clear. Figgens advised that a transfer of property would have to be in conformance with the law and that he could not be sure how a court would interpret the language of the 1997 Agreement. (Hearing, *supra*, at p. 38.)

Following the acceptance of the Agreement, Venetian completed the required traffic impact study. (1997 Agreement at ¶ 2.3(a).) The study concluded that traffic would best be accommodated by widening Las Vegas Boulevard and adding another northbound lane. The solution, however, would use up the government's existing right-of-way, leaving no public sidewalk.

Since the public land at issue belonged to the State of Nevada, rather than the County, the Venetian negotiated with the State of Nevada Department of Transportation ("NDOT") to come up with a solution to the problem. The Venetian claims that the County represented that the County would accept whatever agreement was reached, but the Unions claim there is no support for this proposition.[1] Regardless, the negotiations culminated in a January 8, 1999 Agreement between the Venetian and the NDOT ("1999 Agreement"). (Agreement, attached as Ex. 2 to Pl.'s Mot. T.R.O./Prelim. Inj.) In the 1999 Agreement, the Venetian promised to construct a private sidewalk in front of its property for pedestrian access. The 1999 Agreement stated that the Venetian retained "full rights inherent to the ownership of private property to the full extent permitted by the Fifth and Fourteenth Amendment[s] to the United States Constitution." (1999 Agreement, *supra*, at Mutual Agreements ¶ 6.) The 1999 Agreement also asserted that the NDOT was not taking any state action as to the new sidewalk.

In February 1999, the Venetian demolished the public sidewalk and set up a

---

1. The County's Response appears to lend some support for the Venetian's claim that the County agreed to go along with the decision of the NDOT because the County states it deferred to the NDOT on the issue of the sidewalk. (County's Resp. at p. 3.)

temporary pedestrian walkway. Later that month, the Unions applied to the County for a permit to hold a demonstration in front of the Venetian pursuant to Nev.Rev.Stat. § 16.06 (1991).[2] On February 26, 1999, the County gave the Unions a permit to hold a rally and to engage in picketing on the sidewalk in front of the Venetian.

When the Venetian learned that the Unions planned a rally, it hired a surveyor to mark its property lines and it erected signs stating that the pedestrian walkway was private property. The Unions' rally took place on March 1, 1999, from 4:30 p.m. until 6:30 p.m., and was attended by approximately 1,300 members. During the rally, the Venetian issued warnings that the demonstrators were on private property. The Union members did not leave the property, and the LVMPD, after consulting with the District Attorney, declined to make arrests or issue citations for trespassing.

After the rally, the Unions indicated that they planned to hold another and larger demonstration following the Venetian's opening. The County also indicated that it would issue another permit to the Unions upon its request. The Venetian filed this action three days after the March 1 Unions' rally alleging that the County Defendants have taken Venetian's property without due process to create a public forum, and seeking a declaratory judgment under 28 U.S.C. § 2201 that the Defendant's actions constitute an impermissible deprivation of private property rights without due process and that the privately owned and maintained pedestrian walkway is not a public forum for First Amendment activity.

By its Motion for Temporary Retraining Order and Preliminary Injunction (# 9), Venetian seeks two forms of preliminary injunctive relief. First, it seeks to enjoin Defendants Clark County and LVMPD from "awarding permits or from otherwise authorizing or allowing any persons or organizations to conduct expressive activities on Venetian's private property or to interfere with Venetian's property rights." Second, Venetian seeks to enjoin Clark County and LVMPD from "refusing to recognize, protect or enforce Venetian's property rights based on the erroneous belief that Venetian may not lawfully exclude disruptive, expressive activity or any other unauthorized activity from its private property including its walkway."

## II. Preliminary Injunction

The Venetian seeks both prohibitory and mandatory injunctive relief. As a result, somewhat separate standards apply. *See Stanley v. University of Southern California,* 13 F.3d 1313, 1319–20 (9th Cir.1994).

■ The legal standard generally applicable to a request for prohibitory preliminary injunctive relief is well settled. The party requesting such relief must show: (1) probable success on the merits and irreparable injury; or (2) sufficiently serious questions going to the merits to make the case a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting relief. *See Topanga Press, Inc. v. City of Los Angeles,* 989 F.2d 1524, 1528 (9th Cir.1993). These are not two separate tests, but "merely extremes of a single continuum." *Id.* (citation omitted).

■ When, however, a party seeks injunctive relief that goes beyond preservation of the status quo, and has the effect of requiring affirmative action by the party enjoined, the relief requested is characterized as a mandatory injunction. *See Dahl v. HEM Pharmaceuticals Corp.,* 7 F.3d 1399, 1403 (9th Cir.1993). Mandatory injunctions are disfavored, and therefore, the district court should not issue the mandatory preliminary injunction "unless the facts and law clearly favor the moving

---

**2.** Nev.Rev.Stat. § 16.06 requires persons to obtain permits before putting on a special event requiring the closing of a public street or right-of-way.

party." *Id.* (quoting *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979)). *See also Hilton Hotels Corp. v. ITT Corp.,* 962 F.Supp. 1309, 1310 (D.Nev.1997).

■ The prohibitory injunctive relief requested by Venetian's Motion is rendered moot by the County's response that it will no longer issue permits to the Unions to hold a rally on the sidewalk in front of the Venetian. (County's Resp. at p. 3.)

The mandatory injunctive relief requested by Venetian, however, would require that County Defendants to take the affirmative steps of warning, citing, or arresting those who engage in First Amendment expressive activity to which the Venetian objects.[3]

## III. Discussion

The Venetian claims that it will succeed on the merits of its takings and due process claims. It also argues that it has proved irreparable harm because it has shown a constitutional violation and because the Unions actions will irreparably injure its goodwill. The Defendant Unions respond that the Venetian fails to state a federal claim. Alternatively, the Unions claim that they have a right to enter the Venetian's property either through agreement or by operation of law. The Unions also maintain that Venetian's injuries, if they exist, can be compensated with money, and thus do not qualify as irreparable harm. The County Defendants respond that they take a neutral position and will abide by the Court's decision on the matter. Since this Court finds that the Venetian has not clearly demonstrated it will succeed on the merits, the Court does not find it necessary to address the Venetian's arguments concerning irreparable harm.

## A. Failure to State a Federal Claim

The Unions rely on *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), for the proposition that when "a state refuses to allow a commercial business to suppress free speech activity on its private property, the state does *not* violate the owner's federal rights under the First, Fifth or Fourteenth Amendments." (Unions' Opp'n at p. 9.) The Unions reason that by not arresting the protestors, the County is refusing to allow the Venetian to suppress speech. The Unions claim this can not be a taking or due process violation under *PruneYard,* and the Venetian must file suit in state court to determine if the County's actions were appropriate under Nevada law.

The Unions read *PruneYard Shopping Center* too broadly. The Court did not say that a state's interference with private property rights could never amount to a constitutional taking. Instead, the Court found that the California Constitution validly gave California citizens the right to free speech in privately owned shopping centers. *Id.* at 78–82, 100 S.Ct. 2035. It then found that the California law was not a constitutional taking because it did not impair the value of PruneYard nor did it interfere with the owner's investment backed expectations. *Id.* at 83, 100 S.Ct. 2035.

Even assuming that the sidewalk in this case is private property and that Nevada allows Unions to picket on private property, this Court could not automatically say that no taking had occurred. The Court would have to go through the takings anal-

---

3. At oral argument, counsel for the Venetian was questioned by the Court as to whether all forms of expressive activity under the First Amendment would be deemed objectionable by the Venetian. Counsel responded that "incidental First Amendment expression" such an individuals wearing shirts with political messages while traversing the Venetian pedestrian walkway between the north and south public sidewalks would not be deemed objectionable by Venetian. Given the Court's ruling on Venetian's motion for injunctive relief, the Court finds it unnecessary to attempt to decipher precisely what the Venetian would deem to be "incidental First Amendment expression" versus "objectionable First Amendment expression."

ysis because deciding whether a state act is a constitutionally taking is "essentially [an] ad hoc, factual inquir[y]." *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). Moreover, the Court's finding in *PruneYard Shopping Center* that the PruneYard owner had not been deprived of property without due process of law is not applicable to this case. 447 U.S. at 84–85, 100 S.Ct. 2035. *PruneYard Shopping Center* discussed substantive due process, while the Venetian claims that the County violated its right to procedural due process. Thus the Court must reject the Unions' argument that under *PruneYard Shopping Center,* Venetian fails to state a federal claim.

## B. Taking

The Fifth Amendment to the Constitution provides that private property shall not be taken "for public use without just compensation." U.S. Const. amend. V. A threshold issue in a takings analysis concerns the nature of the property right at issue. *See, e.g., Phillips v. Washington Legal Foundation,* 524 U.S. 156, 118 S.Ct. 1925, 1934, 141 L.Ed.2d 174 (1998) (making the threshold determination that interest earned on client trust accounts is the private property of the client). If a private property right is being invaded, a court must then determine if the invasion amounts to a constitutional taking.

■ A constitutional taking occurs when it is unfair to make an individual bear the burden of an invasion that benefits the public. *See Eastern Enterprises v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 2146, 141 L.Ed.2d 451 (1998) (citing *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979)). This is a fact intensive analysis. *See Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). To decide if a regulation is a constitutional taking, courts often examine the following three factors: "the economic impact of the regulation, its interference with reasonable

investment backed expectations, and the character of the governmental action." *Id.* In contrast, the Supreme Court has found that a permanent physical invasion constitutes a taking regardless of any public interest it serves. *See Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 426, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).

The Venetian argues that by refusing to arrest the Union members when they protest on the sidewalk, the County is depriving it of its property right to exclude. *See Kaiser Aetna,* 444 U.S. at 179–80, 100 S.Ct. 383. The Unions respond that the County is not depriving the Venetian of this right because the Venetian gave up the right to exclude others in the 1997 Agreement. Alternatively, the Unions argue the Venetian does not have a right to exclude the protestors because the sidewalk is a public forum under the First Amendment.

### 1. 1997 Agreement

■ The Unions argue that the Venetian gave the public unrestricted access over the sidewalk in the 1997 Agreement with the County. (1997 Agreement, *supra,* at ¶ 2.2.) At the hearing conducted April 21, 1999, the Unions claimed that the 1997 Agreement requires the Venetian to convey all property rights associated with the sidewalk to the County before the Venetian can obtain a certificate of occupancy. The Unions reason that the 1999 Agreement, which states that the sidewalk is private, is an invalid attempt to change the character of the rights the Venetian dedicated to the people in the 1997 Agreement.

The Court agrees that the proposed property rights contemplated by Paragraph 2.2 of the 1997 Agreement could have included the rights to the sidewalk in front of the Venetian. Paragraph 2.2 states that the Venetian must turn over the proposed property rights to the needed improvements within the development. The definition of improvements includes those needed along the frontage of the

Venetian parallel to Las Vegas Boulevard South as a result of the traffic impact study. (1997 Agreement, *supra*, at ¶ 1.2(i).) However, there is no indication that the County actually proposed that the Venetian convey the rights to the sidewalk. The Court finds it unlikely that the County could now seek conveyance of the property rights without cost as contemplated by the 1997 Agreement because the Venetian agreed to pay for and maintain the sidewalk in the 1999 Agreement. (1997 Agreement, *supra*, at ¶ 2.2, 1999 Agreement, *supra*, at Company Agreements ¶ 1.) Since the County never asked for the property rights to the sidewalk, the 1997 Agreement provides no support for the Unions argument that the Venetian waived its right to exclude. The 1999 Agreement providing that the sidewalk is the private property of the Venetian controls.

### 2. First Amendment

The Unions maintain that, even if the Venetian owns the sidewalk, the Union members and other citizens have access to the sidewalk for free speech purposes in accord with the First Amendment to the United States Constitution.[4] The parties agree that the previous sidewalk bordering the Sands Hotel was a public forum and if the current sidewalk was owned by the government, it would also be a public forum available to citizens for expression under the First Amendment subject to content neutral and reasonable time, place and manner restrictions.

Sidewalks have traditionally been recognized as the quintessential public forum. *See Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988). However, courts have not automatically found that a sidewalk is a public forum just because it is owned by the public. When deciding if a publicly owned sidewalk is a public forum, courts often distinguish sidewalks and walkways that are incidental to government property at issue from sidewalks and walkways that are generally used by the public as a thoroughfare. For example, in *United States v. Kokinda*, 497 U.S. 720, 722–23, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990), the Supreme Court was called upon to determine whether a sidewalk that was adjacent to a post office and separated the post office from the parking lot was a public forum. The Court found that the sidewalk at issue was not a public forum because it was not a public passageway. *Id.* at 727, 110 S.Ct. 3115. The Court also distinguished the sidewalk because it was only used as a destination walkway by those visiting the post office as opposed to a sidewalk used to "facilitate the daily commerce and life of the neighborhood or city." *Id.* at 728, 110 S.Ct. 3115.

The pedestrian walkway at issue in front of the Venetian is not simply a sidewalk

---

4. Although the Unions do not raise it as a defense, the Venetian claims that Nevada law does not provide any greater protection for free speech rights on private property than does the United States Constitution. The Venetian bases this contention on the fact that Nev.Rev.Stat. § 614.160(1)(a) (1997) states that unions can not picket on private property and on the fact that a Nevada state district court has previously issued an injunction prohibiting solicitation on a sidewalk owned by the Mirage because it is private property, *The Mirage Casino–Hotel v. International Missing Childrens Bulletin, Inc.*, No. A340053 (Nev. 8th Jud. Dist. Dec. 22, 1995). These sources are not particularly persuasive as the Nevada statute has not been construed by the Nevada Supreme Court and basis of the decision in the *Mirage* case is unclear.

The Nevada Constitution clause protecting free speech, Nev.Const.Art. 1 § 9, contains almost the same language as that found to provide greater freedom of expression by the California Supreme Court, in *Robins v. Pruneyard Shopping Center*, 23 Cal.3d 899, 153 Cal. Rptr. 854, 592 P.2d 341, 347 (1979). However, other courts have examined similar language and have found that it does not provide access to private property. *See, e.g., Eastwood Mall v. Slanco*, 68 Ohio St.3d 221, 626 N.E.2d 59, 61 (1994). *See also* Harriet Dinegar Milks, Annotation, *Validity, Under State Constitutions, of Private Shopping Center's Prohibition or Regulation of Political, Social, or Religious Expression or Activity*, 52 A.L.R.5th 195 (1998).

used for ingress and egress to the Venetian, nor is it a specific destination in and of itself. The sidewalk in front of the Venetian may look different from the adjoining public sidewalks to the north and south, but it has fundamentally the same function. It allows the public to traverse from one point on a public sidewalk to another. It is used to facilitate pedestrian traffic in daily commercial life along the Las Vegas Strip generally, as well as for access to the Venetian. The question remains whether the Venetian's private ownership of the property on which the sidewalk is located entitles the Venetian to regulate the free expression of those who use it.

▉▉▉ The general rule is that the Constitution does not apply to private conduct. *See Hudgens v. N.L.R.B.*, 424 U.S. 507, 513, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). There are very limited exceptions to this time honored principle. One occurs in the rare instance where a private actor is performing a function that has traditionally been exclusively performed by the state. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 156–59, 98 S.Ct. 1729, 56 L.Ed.2d 185. For example, in *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946), a private company owned an entire town performing all of the usual municipal functions and owning all the buildings and sidewalks. *Id.* at 502–03, 66 S.Ct. 276. The Court found that the Constitution applied to the activity in the company owned town. *Id.* at 508, 66 S.Ct. 276.

▉▉▉ The Venetian argues that *Marsh* has since been limited to its facts. As support, the Venetian cites a statement made by the Supreme Court in *Lloyd Corp. v. Tanner*, 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), and repeated in *Hudgens.* In *Lloyd Corp.*, the Court was deciding whether a privately owned shopping center should be subject to the requirements of the First Amendment. *Id.* at 552–53, 92 S.Ct. 2219. The parties seeking free speech rights argued that the shopping center was the functional equivalent of a central business district. *Id.* at 568–59, 92 S.Ct. 2219. The Court distinguished the shopping center from *Marsh* by noting that the shopping center did not perform all of the municipal functions and concluded that the First Amendment did not apply. *Id.* at 569, 92 S.Ct. 2219.

The Venetian disregards two important aspects of *Marsh.* First, in *Marsh*, the Court was distinguishing the argument that a shopping center was like a "company town." Second, subsequent Supreme Court cases have suggested that *Marsh* is not limited to its facts. *See Flagg Bros.*, 436 U.S. at 158, 98 S.Ct. 1729.

Of course, circumstances which give rise to cases such as *Marsh* are very rare. Private property rights are very important and should not be disregarded simply because a private owner performs a function that is sometimes performed by the government. Nevertheless, if ever there was a case where the protections of the First Amendment to the United States Constitution should be applied to private property used for a particular public function, this is the case. Thoroughfare sidewalks parallel to the main public street in a city, that allow citizens to move from one part of the city to the next, have traditionally been exclusively owned and maintained by the government. Consequently, by owning and maintaining the particular sidewalk at issue in this case, the Venetian is performing a public function.

The distinction between the functions performed by a sidewalk and a shopping center was clearly drawn by the court in *Citizens to End Animal Suffering & Exploitation, Inc. v. Faneuil Hall Marketplace, Inc.*, 745 F.Supp. 65, 70–72 (D.Mass. 1990). Faneuil Hall Marketplace is a commercial development with three buildings housing various commercial enterprises and with cobblestone lanes separating the buildings. *Id.* at 67 n. 1. The land is owned by the City of Boston, but is leased to Faneuil Hall under a ninety-nine year lease. *Id.* at 68 n. 1. The court considered

the property to be private during its public function analysis. *Id.* at 69, 70–72. The Court found that the private owner was performing a private function by operating the lanes in the marketplace. *Id.* The Court noted that the public had a right of access to the lanes, and often used them as passages in daily traveling. *Id.* at 70. By prohibiting protestors, the Court found that the owner was performing a public police function and a legislative function. *Id.* at 71–72. The Venetian is performing similar public functions with respect to the sidewalk abutting Las Vegas Boulevard South.[5]

## IV. Conclusion

The sidewalk in front of the Venetian was previously public, serves as a thoroughfare along a main public road, and serves the needs of the general public. As such, it falls within a very limited exception to the general rule that private property is not subject to the First Amendment. Since the sidewalk performs an essential public function, the Venetian does not have the right to exclude individuals from the sidewalk based upon permissible exercises of their right to expression under the First Amendment, and the County has not taken the Venetian's private property rights by failing to arrest or cite individuals who do so. The public may use the Venetian's sidewalk for First Amendment purposes to the same degree that it may use any other public sidewalk subject to content neutral and reasonable time, place, and manner restrictions.

IT IS THEREFORE ORDERED that Plaintiff Venetian Casino Resort's Motion for Temporary Restraining Order and Preliminary Injunction (# 9) is DENIED.

---

**5.** The circumstances presented here, as well as those present in *Faneuil Hall Marketplace,* are clearly distinguishable from those presented in two cases relied upon by Venetian, where the thoroughfares in question were private access roads to a hospital and an amuse-ment park and where limitations on expression under the First Amendment were upheld. *See Garrison v. City of Lakeland,* 954 F.Supp. 246, (M.D.Fla.1997), and *International Soc'y for Krishna Consciousness, Inc. v. Reber,* 454 F.Supp. 1385, (C.D.Cal.1978).